Yes, good morning, your honors. I am Ina Lipkin on behalf of the petitioner, and this is an immigration matter in which the petitioner contends that the board erroneously ignored his arguments on appeal regarding the timeliness of his asylum application filing, that the board erred in not finding that the IJ incorrectly disregarded his witness statement, which was his best ability. And so I would like to ask you, Mr. Holder, if you would be so kind as to give us the most reliable evidence to establish his presence in Canada for the 20 months that he was there. The ---- Kagan What witness statement? You mean the person who said that he knew when he left, he knew when he came back? Holder Correct, Mr. Gurmeet Singh. Kagan He didn't really know anything. He only knew that that's what he was told. Well, certainly it is not the very best evidence one would like to see in such proceedings, but given the fact that he was not in Canada legally, therefore presumably would have been unable to get any identity documents, work permits, or other more substantial indicia of his presence, therefore secondary evidence such as witness affidavits, which are commonly and routinely accepted in immigration proceedings, for some reason. Kagan Of course you could have a witness affidavit, but the witness affidavit would be somebody in Canada who said I saw him there on the next date in the middle of that time period. Well, there was no testimony elicited from the Petitioner either by DHS counsel or the judge regarding who did you stay with in Canada and why isn't that person in court. The only questioning regarding witnesses really had to do with Mr. Gurmeet Singh and what he knew. Kagan Let me ask you, I mean, it seems to me that part of the case that I was troubled by was the adverse credibility finding with regard to the merits of the withholding claim, which seemed to be based entirely on the same issue. Is that right? Is there anything else? There was one more issue that the IHA relied upon, and that was the Petitioner's differing testimony before the Asylum Office regarding his manner of entry. There was regarding his manner of entry from Canada to the United States in the year 2000. But nothing having to do with the story about what happened in India? Nothing. It seems that the IHA extrapolated what he thought were inconsistencies regarding the narration of the entry and decided to then cast this dark pail across the rest of the case without being able to find one inconsistency regarding the four arrests that the Petitioner had experienced in India. In fact, the only point upon which the IHA's incredibility finding rested was, why did he tell the Asylum Officer that he traveled through two vans or trucks, whereas in court he said there was a van, then there was a taxi cab, whatnot? In fact, this is a pre-Real ID Act case, and as such, the IJ should have concerned himself with matters that were material to the heart of the claim of persecution and not the manner of his entry, which absolutely had nothing to do with the persecution that he endured. His four arrests, which were the result of an imputed political opinion that the Indian police placed upon him, solely due to his membership in a pro-Kalistani political group and because they thought that he harbored anti-national sentiments as a result. Nothing in all that testimony after the board remanded in 2004, this Petitioner had testified consistently through a number of individual hearings, never, never saying anything inconsistent with his written statements or his supporting documentation. Well, I guess there was another thing that the ALJ relied on, which was some vagueness or repetitiveness with regard to his beatings and injuries. Well, his blanket statement that the Petitioner was vague without really pointing to what he found to be deficient was not a substantive basis to make an adverse finding. In fact, if a close – when looking at the record, it is clear that at all times the Petitioner testified as fully and cogently as he could. Again, he's working under the stress of this hearing in which his life is going to be – life course will be determined, and then, you know, working with a translator. We're not saying that there was anything wrong with that translation, but simply he was asked questions, he answered them directly. If the IJ needed more clarification, he could have asked, but that doesn't appear to have come up. Your adversary is going to say that there's plenty of evidence here that he lied to the asylum interviewer. If that is substantiated, why isn't that sufficient to show an adverse credibility determination? Well, first of all, he did admit – he admitted after questioning, but he did admit that he did not accurately portray his manner of entry into the U.S. Is that another way of saying lying? I don't know if we're on the same – I don't need to be politically correct. I will admit that he lied on that issue, but he explained why. If you're saying something different from the record, I'd like to know, but they said it was a lie, and if that's true, why wouldn't that be sufficient for the IJ for an adverse credibility determination? Because he gave a credible, plausible explanation to that particular narration. He stated that he relied on a preparer who helped him make the application, who told him that it would sound much better if he related his manner of entry in the way that he did to the asylum office. That supports the inference that he might have done that, but other things, too. In other words, if somebody else told him to say something else that would be better, he might say it. Well, that would be true, except for the fact that he gave a plausible explanation as to why he did it, and court precedent clearly states that manners were –  So it's plausible in the sense that it's a plausible explanation for why one would want to lie. But it is – but to have a plausible explanation for a lie doesn't change the nature of the lie. It was a conscious – it was a conscious effort to deceive the United States. And there isn't – I don't see that there's any other plausible explanation for it. Well, the fact that he had narrated that he had gone through two vans versus a van and a taxi cab, maybe in his mind he thought that that was enhancing his manner of entry, but in fact it really changed nothing regarding his manner of entry in the sense that he entered without inspection. And it relates not at all to the merits of the claim. He staunchly stood up for the four arrests that he had. He did not back down, no matter how much questioning he had through numerous hearings. His supporting documents corroborated the events that he narrated to the court. He had no reason to fabricate any part of that narration. And he explained why in his mind he thought it was necessary to embellish his manner of entry. But in the end, it has no bearing on the merits of the claim. What do you do with the I.J.'s finding that he could live elsewhere in India? I'm sorry. I didn't hear your honor. What do you do with the I.J.'s findings on page 21 of the I.J.'s decision that the Respondent could live elsewhere in India? We feel that the I.J. blatantly ignored the numerous background documents that established that, first, police impunity is rampant throughout India. Secondly, the background documents established that those that the police view as anti-national, whether legitimately or not, are individuals that the police would have a motive and inclination to seek out throughout India, especially based on tenant verification laws and the fact that if he wanted to rent an apartment or get a job, he'd have to present himself, his I.D. would be required. That could be relayed to his native village, and then he could be found out. Time. If you want to reserve any time, you should do that. Sure. Thank you very much. Good morning. May it please the Court. Jessica Sherman on behalf of the Respondent, Eric Holder. Mr. Singh had five opportunities to present his claim for relief, and he was found not credible every single time. This Court lacks jurisdiction to review the untimeliness of his asylum application because the facts regarding Mr. Singh's entry into the United States are in dispute. He established that he arrived in 1998, but it's unclear when, if ever, he left for Canada and when he returned to the United States. And because those dates are in dispute, there's no jurisdiction for the Court to review the untimeliness of the application, because depending on the view of the facts, the application may or may not have been timely. So we would argue that the Court should not review that determination. Turning to the adverse credibility determination, Mr. Singh admitted to lying to the asylum officer. When he was specifically asked whether he did lie, Mr. Singh said yes. And this Court has held that the intentional deception in immigration authorities is culpable conduct that casts doubt on the applicant's entire story and supports the basis as a proper basis for an adverse credibility determination. This is not an instance of him being unable to remember key dates, but rather a deliberate deception to enhance his claims. Kagan. It is kind of peculiar, though, because it goes to the timeliness, but it really doesn't go to the merits of the story. And the only thing that was said about the merits of his story was that it was his story was vague with regard to the beatings, and I'm sitting here reading, it doesn't look very vague to me. So other than that, there was no complaint about his actual story. Well, his story was internally consistent. His admission to deliberate deception shows that he has a propensity to lie. And just because he maybe was able to keep the aspects of his arrest consistent doesn't mean that it's a credible claim when you look at the record as a whole. This Court has recognized that, in fact, that even if the story is consistent, the fact that you deliberately lie to immigration officials is a basis for finding him not credible. He did have trouble providing details about the nature of the beatings and, more importantly, the treatment. I mean, I don't know why anybody's saying that. He went through each beating and he said what happened and when it happened and who  So there's no doubt that it's a credible claim. It's not less vague than a lot of these transcripts. Well, that's true. Coupled with the deliberate deception, I think that it does support the adverse credibility determination. There are instances in the record where he was asked how badly were you beaten, what happened to you, and he just said extremely badly, extremely badly. Well, how would you answer that question? He could say that, you know, he was beaten so that he was bleeding and, you know, broke his arm. But that wasn't the question. The question was how badly were you beaten, not what happened to you. Well, they tried to elucidate more detailed responses. And then he answered it. There are instances. He did seem to get a little short-tempered at some points and say, you know, sort of facetious things, but. He also was vague about the treatment he received. He said he took pills and received oil. But it didn't really he didn't really elaborate on what treatment and it was the exact same treatment for each time, which, you know, it just wasn't there wasn't any details. And he had two hearings before the immigration judge. And the immigration judge pointed these out at the first hearing that, you know, there were these vaguenesses and it appeared to be a fabrication. So he knew at his second hearing in 2006 that he should elaborate on these claims and he failed to do so. In answer to Judge Bybee's question, if there had been the EIJ answered the internal relocation question on the assumption that there had been no past persecution. Correct. If there had been past persecution, the burden would have been otherwise. Correct, Your Honor. Right. So it's somewhat irrelevant in the sense that if you thought there was something wrong with the credibility finding, then the finding on relocation would be pertinent. Well, I don't think that it would require remand because even if there was past persecution, internal relocation would still be a basis to deny asylum. Yeah, but the burden would be the other way. Right. But DHS can sustain their burden with the petitioner's testimony. And here looking at the record, petitioner's testimony I think establishes that he could relocate. He testified that he lived in Delhi. Oh, but surely you would tell us that Ventura requires us to remand, if we thought that. I mean, if the Court disagrees with the credibility, there's also a second alternative merits to termination here, that he did not show he was targeted on account of a protected ground and that it was part of a legitimate criminal investigation for terrorism. Did the BIA hold that? Yes, because the BIA adopted and affirmed the immigration judge's decision. And so that was part of the end of the Board's decision. And the Board said, we also affirmed the immigration judge's determination that he did not establish past persecution or torture. It's the very last paragraph of the Board's decision. This particular case is pre-Real ID Act, isn't it? Yes, Your Honor. So how do you argue this one differently than the one subsequent to the pre-Real ID, where we have to show that any falsehood goes to the heart of the claim? Well, if this was a post-Real ID Act case, it wouldn't matter whether it went to the heart of the claim. But here, although this inconsistency and deliberate deception doesn't relate to what In fact, it has nothing to do with the withholding claim, period. Correct. But again, it shows the deliberate deception. So it has to go to the heart of the claim, but it has nothing to do with it. Because it shows that he has a propensity to lie. In fact, in Carr, a 2011 case, this Court recognized where an alien lied about her marital status so that her husband could also apply for asylum if her application was denied, although that had nothing to do with the basis of her claim. Was that a pre-Real ID Act case? I believe so, Your Honor. I can provide the citation. I'm sorry that there wasn't a 28-year letter filed. But it's 643 F. 3rd 1178. And in that case, she lied about her marital status so her husband could apply for asylum if her application was denied, and the Court found that it didn't matter if the issue that there was deliberate deception on turned out to be irrelevant. It was still basis for an adverse credibility determination. Is there something special about this particular process because he was lying to a United States officer as distinguished from merely reciting something that's untrue? I'm not sure if I understand the distinction that you're – I mean, because he was lying to immigration officials versus – He was lying to the person who's going to allow him to come into the – give him a truth about something that happened in his own country. Does that make a difference? Yes, Your Honor. I mean, this Court has recognized that where an alien lies deliberately to escape persecution, that might not be a proper basis for an adverse credibility determination. But here he was safely in the United States and had been for three years. And so therefore, the only reason to lie about his manner of entering into the United States. And although it doesn't go to the merits of his withholding claim, it goes deeply to the merits of his asylum claim because had he not lied about that, he would not be eligible for asylum. In addition, every – I mean, turning past the credibility to the merits, he did not show he was targeted on account of a protected ground. Every single arrest was part of a terrorist investigation. In 1992, he was questioned about eating terrorists. In 1993, he was arrested after he admittedly housed terrorists in his home. And in 1995, he was arrested after the death of a political leader, although it was heavy-handed, the treatment that he received in the arrest. What does the death of a political leader have to do with? It was believed that it was committed by terrorists, and Mr. Singh had been linked to terrorists by housing them in his house. So there appears to be another logical reason the police were interested in him. I'm sorry?    I just want to say that, as I said, Mr. Singh had been linked to terrorists. I mean, if he's a terrorist, he gets this kind of thing, and it doesn't – it isn't necessarily persecution. It's prosecution. Is that your point? Correct, Your Honor, and although the police treatment – Let me ask you another question. This particular person now has admitted that he didn't tell the truth, but your adversary said that – and I didn't remember this in the record – but your adversary said that the preparer of his documents told him to lie, and I don't remember that. Maybe you do remember that, but I wonder how close this comes to Alvarez-Santos, where if there are inconsistencies in the form that are due to the preparer, that we at least pre-ID Act, they get a free pass on that lie. Well, I think as Judge Bybee recognized, just because somebody told you to lie does not excuse your lie. I'm not – I don't know which case you're referring offhand, but this isn't a situation where – You don't know Alvarez-Santos offhand? I don't know that one offhand. Too bad. Judge Berzon wrote that for the Court, so I know she remembers it. But it just struck me that I didn't find anything in the record that indicated that fact, that is, that a preparer of records had told the petitioner that he should lie to the officer. Do you recall anything in the record that substantiates that? He did testify that he was told by – that perhaps when he was questioned about this inconsistency, he was not forthright about lying. It was after several rounds of questioning that he admitted that maybe the preparer told him to say that, but he didn't remember. But even if that was the case, it doesn't excuse his deliberate deception. And he also had five – or four subsequent opportunities to come forward and admit that he lied. And, in fact, at the beginning of his hearing, he was asked if his asylum application and prior statements were correct and if he wanted to correct anything, and he did not. Okay. Thank you very much. Your time has expired. Thank you very much, Your Honor. We'll give you one minute. Your Honor, it's actually in the record on page 188, the petitioner states that he did rely on the preparer's representations to him regarding what to state about his manner of entry. And we argue that's different than saying he told the story to a preparer and the preparer wrote it down wrong or changed his story. Correct. But he relied on the preparer's strong suggestion to include that portion of his story. Right. So he knew he was signing something that was false. In that one instance, Your Honor. I also want to touch upon the Court's jurisdiction. Though the facts may be in dispute regarding his date of entry, the petitioner argued that the IJA violated his due process by failing to weigh Mr. Gurmeet Singh's interest, his argument regarding the date of entry. And you do have jurisdiction over that kind of argument. Thank you very much. Thank you both for a helpful argument. The case of Singh v. Holder is submitted. And we will go on to the next case of the day.
judges: Wallace, Berzon, Bybee, Cjj